**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAROD SHELTON

        PLAINTIFF,                           **CASE NO.**

vs.

AT&T SERVICES INC.

        DEFENDANT.

**EMPLOYMENT DISCRIMINATION COMPLAINT**

**NOW COMES, PLAINTIFF**, **JAROD SHELTON,** and files this complaint to redress the discrimination he encountered while working for DEFENDANT, **AT&T Services Inc ("AT&T")**, which ended in his wrongful termination from employment due to his race and retaliation in violation of Title VII, 42 USC 2000e et seq., 42 USC 1981, PLAINTIFF, the Illinois Human Rights Act, 775 ILCS 5/2-101 et seq, and for failure to pay his wages pursuant to the Illinois Wage Payment Collection Act.

1. PLAINTIFF, Jarod Shelton Male who resides in Chicago, Cook County, Illinois. PLAINTIFF's Race and Color is Black.

2. DEFENDANT, AT&T SERVICES INC. ("AT&T"), does business throughout the world and the State of Illinois.

3. AT&T employs more than 500 workers for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

4. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343 (civil rights). The court also has Supplemental jurisdiction over the State Claims as they come out of the same set of facts and/or questions of law.

5. Venue is also proper in this Court as the actions occurred in Cook County, Illinois.

6. On May 4, 2022, PLAINTIFF filed charges of discrimination with the Equal Opportunity Commission ("EEOC") and had it cross-filed with the Illinois Human Rights Department ("IHRD"). AT&T received the charges of discrimination a short time later.

7. On or about March 19, 2023, PLAINTIFF filed an amendment to the Charge of Discrimination for both the Federal and State agencies and asked for a Right to Sue Letter. The amendment were made to encompass the discrimination that occurred since his initial charge and his termination of employment.

8. All required conditions precedent required under the IHRA have been exhausted and/or performed by PLAINTIFF prior to the filing of this Complaint. PLAINTIFF received the Notice that he could sue the DEFENDANT from the Illinois Human Rights Department via US Mail or about June 2, 2023. This suit is timely filed within the 90 days allowed from the receipt of this IHRD letter.

9. All required conditions precedent required under Title VII (42 U.S.C. §2000e et seq.) have been exhausted and/or performed by PLAINTIFF prior to the filing of this complaint. PLAINTIFF received the Notice of Right to Sue via US Mail or about April 5, 2023. This suit is timely filed within the 90 days allowed from the receipt of this right to sue letter.

10. PLAINTIFF was an employee of AT&T as defined by 42 USC § § 2000e(f).

11. AT&T was an employer of PLAINTIFF in Cook County Illinois.

12. PLAINTIFF performed his job duties in a satisfactory manner while he worked for AT&T. PLAINTIFF received good reviews and was promoted by AT&T.

13. Pursuant to Illinois Law, 820 ILCS 96et.al. and the Illinois Uniform Arbitration Act, 710 ILCS 5/1 it is against the State of Illinois public policy for an employer to force an employee to sign an arbitration agreement as a condition of employment.

14. AT&T does not have any written agreement with the PLAINTIFF that would demonstrate that PLAINTIFF knowingly bargained and gained consideration for an arbitration agreement

with AT&T. Additionally, PLAINTIFF has never signed an agreement to arbitrate with DEFENDANT.

15. In July 2021, PLAINTIFF's direct supervisor, Arban Gashi ("Gashi") who is not Black, made offensive and racist statements directed to PLAINTIFF calling PLAINTIFF an "Angry Black Guy." PLAINTIFF objected to the term to Gashi and Gashi reemphasized that PLAINTIFF was an "Angry Black Guy." In addition to comments that were racially offensive and insensitive to PLAINTIFF, Gashi treated the PLAINTIFF less favorably compared to similarly situated employees who were not Black.

16. In August 2021, PLAINTIFF reported Gashi's discriminatory actions to his supervisor, Rose Floyd ("Floyd") and asked her to solve and correct the racially discriminatory treatment that PLAINTIFF received while working for Gashi.

17. After PLAINTIFF made the complaint to Floyd, Gashi and Floyd's treatment of PLAINTIFF became worse towards the PLAINTIFF. The negative treatment from Gashi and Floyd became intolerable and unbearable to PLAINTIFF. Floyd and Gashi made derogatory statements about PLAINTIFF to numerous employees of AT&T which negatively affected the PLAINTIFF.

18. In December 2021, AT&T had an organizational Christmas party for PLAINTIFF's work group. At the Christmas party, Floyd and/or Gashi offered the job which PLAINTIFF was in at that time to Anthony Bhhamundi (another AT&T employee). Bhhamundi asked Floyd and Gashi whether it was the job PLAINTIFF had and both replied do not worry about him he will be out of the position soon.

19. On or about December 16, 2021, Gashi called PLAINTIFF and told PLAINTIFF that PLAINTIFF needed to move to another position. The position Gashi told PLAINTIFF that he needed to accept would pay PLAINTIFF $30,000 to $40,000 less pay per year and included a demotion. Gashi told PLAINTIFF that he would pay PLAINTIFF under the table

to make up the pay difference. Gashi told the PLAINTIFF on the call that he had no choice but to accept the demotion. Gashi also threatened PLAINTIFF that if he did not accept the position that PLAINTIFF would receive no assistance or help from other staff of AT&T and that when PLAINTIFF would not meet his sales goals he would be disciplined and managed out of the company. Due to the threats made by Gashi PLAINTIFF said to Gashi he would think about it.

20. On December 17, 2021 PLAINTIFF texted Gashi that PLAINTIFF did not accept the "SE opportunity." About an hour after PLAINTIFF texted Gashi on December 17, 2021, PLAINTIFF received a telephone call from Rose Floyd. Floyd told PLAINTIFF he needed to take the job offered by Gashi. Floyd threatened PLAINTIFF and said to PLAINTIFF "don't ever forget I'm still your director and can make things very difficult for you." Floyd said in the telephone call that if PLAINTIFF did not accept the demotion, she would find a way to get him terminated from AT&T.

21. PLAINTIFF reported Floyd and Gashi's actions and filed a complaint of discrimination and retaliation to Beverlyn Tremble in DEFENDANT's Human Resources Department("HR").

22. After PLAINTIFF reported Gashi and Floyd's actions towards him on December 16 and 17, 2021, PLAINTIFF was excluded from getting help from other team members and was treated less favorably than other employees who worked for Gashi and Floyd.

23. PLAINTIFF was moved to another manager, Evan Loretti, who also worked with Gashi and was supervised by Floyd. Loretti intensified the discrimination and retaliation against the PLAINTIFF and refused to allow PLAINTIFF to attend meetings in his group, would not allow PLAINTIFF to speak in team meetings, and mistreated the PLAINTIFF.

24. Gashi, Loretti and Floyd interfered with PLAINTIFF's job and tried to make his work life difficult if not impossible to perform his job. PLAINTIFF was singled out by DEFENDANT

and treated inferior because of PLAINTIFF's race and/or for his asserting his rights under the IHRA, Title VII and to be free of discrimination.

25. The treatment by Floyd, Gashi, Loretti and other employees of AT&T to PLAINTIFF which was discriminatory and/or retaliatory and interfered with PLAINTIFF's terms and conditions of employment included but was not limited to the following:

   a. DEFENDANT took away PLAINTIFF's vacation time off for 2022.

   b. DEFENDANT more closely supervised the PLAINTIFF's work than other employees.

   c. DEFENDANT isolated the PLAINTIFF from others and did not allow him in team meeting, functions, and team calls.

   d. Spoke about PLAINTIFF with racist overtones and to PLAINTIFF negatively due to his race and/or because PLAINTIFF asserted his right to be free of discrimination.

   e. Falsely accused PLAINTIFF of violating AT&T's conflict of interest policy for selling houses when PLAINTIFF was not selling houses.

   f. Destroyed document such as emails of PLAINTIFF some of which substantiated his claim.

   g. DEFENDANT interfered with witnesses who PLAINTIFF Notified HR had information.

   h. DEFENDANT moved PLAINTIFF from the location he worked in Chicago a few miles from his house to an office in Arlington Heights Illinois which took PLAINTIFF an hour and a half each way to get to and from work.

   i. DEFENDANT required PLAINTIFF to travel to an office in Arlington Heights, Illinois which was a one and a half hours away from his house while other employees similarly situated to PLAINTIFF worked from home.

   j. Refused to provide support to PLAINTIFF for his job and denied PLAINTIFF assistance and support from other employees of DEFENDANT.

   k. Supervisors and Human Resources staff of DEFENDANT yelled, ridiculed, and mistreated the PLAINTIFF.

l. Created a false write up of PLAINTIFF which included a final warning and then refused to correct it.

m. Isolated the PLAINTIFF from being able to communicate with other employees.

n. Failed to notify PLAINTIFF or his supervisor of the false writeup of PLAINTIFF.

o. Supervisors of PLAINTIFF maligned and slandered the PLAINTIFF to others.

p. Failed to follow its personnel policies towards PLAINTIFF to deny him the same working conditions and treatment as other employees.

q. Harassed the PLAINTIFF which created a hostile work environment.

r. Failed to rectify the discrimination that PLAINTIFF encountered even though he made numerous complaints to AT&T HR.

s. Accused the PLAINTIFF of lying to them about his Paternity Leave and Wrongfully accused the PLAINTIFF of paternity fraud.

t. Violated its policies relating to Paternity Leave and had others contact the PLAINTIFF On leave and tried to have PLAINTIFF fired for suggesting that PLAINTIFF lied about taking parental leave.

u. Defamed the PLAINTIFF.

v. In January 2023 DEFENDANT encrypted PLAINTIFF's emails. The effect of DEFENDANT encrypting PLAINTIFF's emails made it so PLAINTIFF could not send emails to others.

w. After PLAINTIFF notified DEFENDANT that he was subject to racial discrimination, multiple managers for DEFENDANT told PLAINTIFF he was not welcome to work with his team and to not contact his team as they will not communicate with PLAINTIFF.

x. Transferred PLAINTIFF from a job which was safe and not subject to being eliminated to a job which was eliminated.

    y. Transferred PLAINTIFF to a job without his desire or consent which was to be eliminated about a month or so form the date PLAINTIFF was required to transfer to the job.

26. Floyd, Lorretti and Gashi as well as other employees of AT&T treated PLAINTIFF favorably worse than similarly situation employees who were not Black and/or who did not report Racial Discrimination to the AT&T.

27. AT&T did not employ other employees who were Black in PLAINTIFF'S work area while PLAINTIFF worked for Floyd and/or Gashi.

28. Other employees of AT&T who were not White made complaints against Gashi, Loretti and/or Floyd including complaints of racial discrimination during the time PLAINTIFF worked for AT&T.

29. Other employees who were Black who worked with Gashi and/or Floyd at AT&T transferred away from being managed by Floyd and/or Gashi or quit due to different treatment they received due to their Race.

30. PLAINTIFF made numerous reports to the AT&T hotline for help regarding the discrimination and retaliation he was encountering from August 2021 through the time he was fired and even after he was fired.

31. PLAINTIFF used the AT&T hotline for employee who needed help on numerous occasions to discuss the discrimination and retaliation he was encountering in his job with AT&T and how it was affecting him.

32. The actions of DEFENDANT and its harassment of PLAINTIFF became so severe PLAINTIFF's doctor required that PLAINTIFF be placed on medical leave.

33. Floyd, Gashi and other supervisors continued to demean, harass, bully, and spread lies about the PLAINTIFF on a regular basis. PLAINTIFF felt the negative treatment was relentless and interfered with his ability to his working conditions.

34. Bryan Sly (Not Black) who was vice president of DEFENDANT met with PLAINTIFF. Sly asked PLAINTIFF why he did not quit. Sly also told PLAINTIFF that AT&T could not fire PLAINTIFF as he filed claims against them Sly finally asked how much it would cost to get PLAINTIFF to quit his job immediately.

35. PLAINTIFF reported the statements and actions of SLY to HR representative Beverlyn Trimble.

36. In March 2022, Ray Alford who is a BLACK male offered to have PLAINTIFF move to his organization. DEFENDANT blocked PLAINTIFF's transfer to the other position.

37. In July 2022, PLAINTIFF was told by HR that the discrimination became so severe that AT&T's legal was having PLAINTIFF job moved to another group–the AT&T Government organization.

38. Initially, the job in the AT&T Government organization that PLAINTIFF was transferred into was a stable job with a new supervisor. PLAINTIFF's stability in the new job changed when the PLAINTIFF's supervisor changed in the new job.

39. In October/or November 2022, Isiah Bozkiah communicated to PLAINTIFF and stated that Bozkiah was taking over the department in January 2023 and that he was to be his supervisor. Bozkiah told PLAINTIFF people in Chicago spoke to him about PLAINTIFF and that Bozkiah had a special project for PLAINTIFF where PLAINTIFF would make a lot of money. PLAINTIFF declined the offer to move to another job.

40. In December 2022 AT&T without PLAINTIFF's consent transferred PLAINTIFF to a new hybrid experimental technical acquisition sales role. PLAINTIFF did not want the transfer and objected to it. PLAINTIFF knew that the position DEFENDANT was transferring him to was unstable and would be eliminated so that DEFENDANT would then be able to terminate him.

41. PLAINTIFF's job duties and responsibilities have been assumed by a non-Black employee when DEFENDANT transferred the PLAINTIFF to the job in 2023 and/or someone who did not make a complaint of discrimination against his supervisors.

42. After PLAINTIFF was told that he would be transferred to the new position, PLAINTIFF contacted his HR representative and told the representative that the transfer was to a position which would be eliminated, that he would be fired in a short time, and that the transfer was retaliation by AT&T for PLAINTIFF filing charges of discrimination. The HR Rep said they would investigate the decision and follow up with PLAINTIFF. The HR Rep never followed up with PLAINTIFF.

43. After not hearing back from the HR Rep, PLAINTIFF followed up with Human Resources in an email on January 17, 2023 and again set out the facts and reemphasized that DEFENDANT transferred PLAINTIFF against his will to a position which would be eliminated. HR did not respond.

44. PLAINTIFF's new job was eliminated in late February, a short time after he was transferred.

45. The removal of PLAINTIFF to a new position without his consent from a safe job to an unstable job was against AT&T's personnel policies.

46. PLAINTIFF contacted the HR associate director, Richard Braune, close to the end of his employment with DEFENDANT and the HR associate director yelled at PLAINTIFF, mistreated the PLAINTIFF, and told PLAINTIFF that PLAINTIFF was a liar.

47. AT&T's acts were done with malicious, oppressive or in reckless disregard of the PLAINTIFF's rights.

48. The actions of the DEFENDANT damaged the PLAINTIFF. PLAINTIFF lost wages and fringe benefits due to AT&T's actions towards him. PLAINTIFF also suffered compensatory damages including loss of reputation, embarrassment and the loss of the job

created financial hardship as well as emotional stress which included physical ailments such as insomnia, stomach pains and medical issues.

## **COUNT 1 FEDERAL RACE DISCRIMINATION TITLE VII**

49. PLAINTIFF realleges paragraph 1-48 as set forth herein.

50. 42 USC § 2000e-2(a) makes it an unlawful employment practice to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race and/or color or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race and color.

51. PLAINTIFF's race was a factor in its decisions to demote, mistreat, transfer, and terminate the PLAINTIFF.

52. The statements made by Gashi, and others were direct evidence of discrimination.

53. AT&T's actions toward the PLAINTIFF as set forth herein violated 42 USC § 2000e-2(a) and TITLE VII.

54. PLAINTIFF requests all relief allowed including that set forth in r 42 U.S.C. § 2000e-5(g).

## **COUNT II 42 USC §1981**

55. PLAINTIFF realleges paragraphs 1-54 into Count II as set forth herein.

56. 42 USC §1981 established that: all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

57. DEFENDANT, AT&T, actions as set forth herein violated 42 U.S.C. § 1981.

58. AT&T's actions damaged the PLAINTIFF.

## COUNT III  HOSTILE WORK ENVIRONMENT

59. PLAINTIFF realleges paragraphs 1-58 into Count III as set forth herein.

60. Employees of AT&T, including those with supervisory capacity over PLAINTIFF, intimidated, threatened, and made derogatory racist statements to PLAINTIFF due to PLAINTIFF's race and/or in retaliation for PLAINTIFF asserting his right to be free from discrimination under 42 USC §1981 and 42 USC 2000e.

61. PLAINTIFF made numerous complaints to AT&T management and AT&T's Human Resource Department. Plaintiff also filed charges of Discrimination against AT&T with the EEOC and Illinois Human Rights Department.

62. AT&T actions violated 42 USC § 2000e and 42 USC §1981. by creating an abusive work environment due to PLAINTIFF's Race and/or in retaliation for him filing a claim of race discrimination to AT&T and filing charges to the EEOC.

63. AT&T's conduct and actions towards the PLAINTIFF were severe, repeatedly done on numerous and regular basis, humiliating, done by PLAINTIFF's Supervisors or management employees of AT&T, had a negative effect on PLAINTIFF which caused the PLAINTIFF to seek medical assistance from the AT&T assistance hotline and his own doctor, forced PLAINTIFF to take leave for mental health, was done by multiple employees in management, was directed solely at PLAINTIFF.

64. The conduct complained of was sufficiently severe or pervasive to alter the terms and conditions of the PLAINTIFF's employment by creating an abusive working environment.

65. At the time the conduct occurred, PLAINTIFF believed that the conduct made his work environment hostile and/or abusive.

66. AT&T knew or should have known about the conduct alleged in this Complaint that were done to PLAINTIFF. AT&T did not take reasonable steps to correct the situation and/or prevent harassment from recurring.

67. The final result of the DEFENDANT's harassment of PLAINTIFF was that DEFENDANT terminated the PLAINTIFF.

68. As a result of DEFENDANT's acts, PLAINTIFF has suffered loss of employment, wages, benefits, and other compensation. PLAINTIFF also suffered extreme emotional stress as well as loss of reputation and other damages.

## COUNT IV ILLINOIS HUMAN RIGHTS ACT

69. PLAINTIFF realleges paragraph 1- 68 as set forth herein.

70. 775 ILCS 5 et seq. makes it illegal to discriminate against someone due to their race. Pursuant to 775 LICS 5/2-102(A) it is unlawful for an employer to engage in harassment or discharge, discipline and create different privileges or conditions of employment on the basis of a person's Race.

71. 775 ILCS 5/2-101(E-1) defines harassment as follows:

"Harassment" means any unwelcome conduct on the basis of an individual's actual or perceived race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, unfavorable discharge from military service, citizenship status, or work authorization status that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment. For purposes of this definition, the phrase "working environment" is not limited to a physical location an employee is assigned to perform his or her duties.

72. DEFENDANT actions towards the PLAINTIFF violated the Illinois Human Rights Act and damaged the Plaintiff due to PLAINTIFF Race—Black. DEFENDANT actions also created a hostile work environment against the PLAINTIFF that harmed PLAINTIFF.

73. DEFENDANT's termination of PLAINTIFF's employment as well as the differences in terms and conditions of employment which PLAINTIFF was subjected to by DEFENDANT was done because

of PLAINTIFF's Race and or in retaliation for PLAINTIFF asserting his rights under the IHRA to be free of discrimination

74. DEFENDANT was aware of the harassment by AT&T's employees and failed to take reasonable corrective measures.

75. Employer's actions were unlawful discrimination against PLAINTIFF in violation the IHRA including 775 ILCS 5/1103 (Q) and 775 ILCS 5/2-102.

## COUNT V RETALIATION

76. PLAINTIFF realleges paragraph 1-75 into Count V as set forth herein.

77. 42 U.S.C. § 2000e-3(a) and 775 ILCS 5/6-101(A) make it a violation to retaliate against an employee for asserting a claim of discrimination or asserting his right to be free from discrimination. Similarly, an employee is also protected from an employer retaliating against him for making a claim for racial discrimination under 42 USC 1981.

78. PLAINTIFF made a good faith report to DEFENDANT to oppose what he believed was unlawful discrimination he was encountering due to his Race.

79. AT&T retaliated against the PLAINTIFF, for his asserting his rights to not be treated differently due to his race, to be free of racial discrimination and retaliation.

80. Defendants actions towards Plaintiff violated the IHRA, TITLE VII and the non retaliation provisions for 42 USC 11981 which included 775 ILCS 5/6-101 and 42 U.S.C. § 2000e-3(a).

81. DEFENDANT actions towards PLAINTIFF also created a hostile work environment for in retaliation for PLAINTIFF asserting his rights to be free of racial discrimination to his employer and filing charges with the EEOC and IHRD.

82. PLAINTIFF was damaged by DEFENDANT's Retaliatory actions towards him.

## COUNT VI -820 ILCS 115- Illinois Wage Payment and Collection Act

83. PLAINTIFF realleges paragraph 1- 82 as set forth herein.

84. PLAINTIFF was an employee of AT&T.

85. AT&T intentionally and illegally failed to give PLAINTIFF vacation time for 2022.

86. DEFENDANT owes PLAINTIFF for wages when it failed to allow PLAINTIFF vacation time off and did not pay PLAINTIFF for his time off.

87. PLAINTIFF has made demand upon AT&T for pay but AT&T has failed to make payment.

88. 820 ILCS 115/5 requires an employer to pay final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.

89. Pursuant to 820 ILCS 115/14, AT&T owe PLAINTIFF 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. Additionally, AT&T owe PLAINTIFF costs, and all reasonable attorney's fees.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests judgment against the AT&T as follows:

1. Declaring that AT&T's conduct has violated PLAINTIFF's rights as secured by the Title VII, The Illinois Human Rights Act and/or 42 U.S.C. 1981.

2. Awarding compensatory damages on each and every cause of action, including but not limited to damages for mental distress and humiliation, embarrassment, degradation, emotional and physical distress, and other nonpecuniary losses as will fully compensate PLAINTIFF for the injuries caused by AT&T's discriminatory conduct.

3. Awarding punitive damages for AT&T's illegal conduct.

4. Make PLAINTIFF whole including back pay, front pay, and benefits and all economic damages which PLAINTIFF has sustained.

5. Awarding such others and additional relief as may be necessary to make PLAINTIFF whole on each and every cause of action.

6. Awarding PLAINTIFF Any damages and/or penalty for not paying the PLAINTIFF for vacation pay pursuant to Illinois Law.

7. Awarding a reasonable attorney's fee and costs in prosecuting this action

8. Enjoining and permanently restraining the alleged violations of law on each and every cause of action.

9. Awarding such other equitable relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,


/s/Steven D. Horak
STEVEN D. HORAK, 6207126
940 Knollwood Dr
Buffalo Grove IL 60089
 (847)877-3120
Steve@stevenhoraklaw.com
ATTORNEY FOR PLAINTIFF

## JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY A JURY.**

Steven D Horak #