UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JAROD SHELTON,          Case No. 1:23-cv-03538

    Plaintiff,

v.

AT&T SERVICES, INC.,

    Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

I.  **INTRODUCTION**

Defendant AT&T Services, Inc. ("AT&T" or the "Company"), by counsel and pursuant to 9 U.S.C. § 3, hereby submits this Memorandum of Law in support of its Motion to Compel Arbitration and Stay Proceedings.

Plaintiff Jarod Shelton sued AT&T in violation of his contractual promise to arbitrate. This Court should compel his claims to arbitration. Numerous federal and state courts across the country – including the District Court for the Northern District of Illinois – have enforced AT&T's arbitration agreement under similar circumstances where an employee refused to honor his or her contractual obligation.[1]

On August 8, 2020 at 12:00 a.m., Shelton effectively agreed to AT&T Management Arbitration Agreement ("Agreement") by failing to opt out by the deadline. The Agreement requires that Shelton and AT&T arbitrate all claims that may arise between them, including those Shelton asserts in this lawsuit. When AT&T reminded Shelton of his promise to arbitrate these

---

[1] *See, e.g.*, *Jessica Jones v. AT&T Mobility Services, LLC*, No. 1:21-cv-04600 (N.D. Ill. June 22, 2023); *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200 (1st Cir. 2019) (affirming district court's order compelling arbitration); *Uszak v. AT&T Mobility Servs. LLC*, 658 F. App'x 758 (6th Cir. 2016) (same); *McMurray v. AT&T Mobility Servs., LLC*, Civ. No. 21-414 (DWF/DTS), 2021 WL 3293540 (D. Minn. Aug. 2, 2021); *Butler v. AT&T*, No. 1:18-cv-01749-PAB-SKC (D. Colo. Mar. 18, 2019); *Carnes v. AT&T, Inc.*, No. 2:18-CV-01639-ACA, 2019 WL 2268977 (N.D. Ala. May 28, 2019); *Kester v. BellSouth Telecomm., Inc.*, No. 3:18-cv-01469-TJC-MCR, 2019 WL 13267100 (M.D. Fla. Aug. 2, 2019); *Matos v. AT&T Corp.*, No. 3:18-CV-02591-M-BK, 2019 WL 5191922 (N.D. Tex. Sept. 9, 2019); *Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2019 WL 77331 (D.N.J. Jan. 2, 2019) (compelling arbitration on an individual basis) (unpublished); *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029 (D. Kan. 2018); *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-cv-00649-CRS, 2018 U.S. Dist. LEXIS 25817 (W.D. Ky. Feb. 16, 2018); *AT&T Mobility Servs. LLC v. Inzerillo*, No. 4:17-cv-00841-HFS (W.D. Mo. Jan. 31, 2018); *Winters v. AT&T Mobility Servs., LLC*, No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804 (C.D. Ill. July 10, 2017); *Thompson v. AT&T Mobility Servs. LLC*, No. 5:17-CV-139-FL, 2017 U.S. Dist. LEXIS 97899 (E.D.N.C. June 26, 2017); *Cornoyer v. AT&T Mobility Servs.*, LLC, No. CIV 15-0474 JB/WPL, 2016 U.S. Dist. LEXIS 140109 (D.N.M. Oct. 5, 2016); *Powe v. AT&T*, No. 3:15-cv-00022-GFVT (E.D. Ky. Mar. 25, 2016); *Couch v. AT&T Servs., Inc.*, No. 13-CV-2004 (DRH)(GRB), 2014 U.S. Dist. LEXIS 178889 (E.D.N.Y. Dec. 31, 2014); *Versmesse v. AT&T Mobility LLC*, No. 3:13 CV 171, 2014 U.S. Dist. LEXIS 27816 (N.D. Ind. Mar 4, 2014); *Karzon v. AT&T, Inc.*, No. 4:13-CV-2202 (CEJ), 2014 U.S. Dist. LEXIS 1516 (E.D. Mo. Jan. 7, 2014).

claims, Shelton refused, violating both the Agreement and the Federal Arbitration Act's longstanding policy enforcing such arbitration agreements.

For these reasons, AT&T respectfully requests that this Court compel Shelton's claims to arbitration and stay this action pending completion of that proceeding.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

On June 5, 2023, Shelton sued AT&T, alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Illinois Human Rights Act, in addition to failure to pay wages under the Illinois Wage Payment Collection Act. *See* Compl. ¶¶ 49-89. Effective August 8, 2020, however, Shelton agreed to AT&T's Management Arbitration Agreement. By doing so, he agreed that "any dispute to which [the Agreement] applies," including those he asserts here, "will be decided by final and binding arbitration instead of court litigation." Declaration of Brandy Giordano ("Giordano Decl.") ¶ 21, Exh. 2.

**A.   Shelton received five notice emails containing the material terms of the Agreement.**

On June 8, 2020, AT&T sent an email to Shelton at his Company-issued email address, JX5697@us.att.com, advising him of a voluntary arbitration agreement that would apply to any future claims he might bring against the Company (or the Company might bring against him) related to his employment. *See* Giordano Decl. ¶ 16-17, Exh. 1, 3. The email explained, "all [] disputes [covered by the Agreement are] to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial" if Shelton did not opt out of the voluntary program within 60 days (by 11:59 p.m. Central Standard Time on August 7, 2020). *Id.* ¶ 21, Exh. 2. The email provided Shelton with instructions on how to opt out below the deadline that was in bold-face type. *Id.* Exhs. 1, 2.

2

The email also advised Shelton that the decision whether to accept the Agreement or opt out was "entirely up to [him]," and that "[n]o one [would] be subjected to pressure or retaliation in connection with this decision." *Id.* The email further stated that "[i]t is very important [for Shelton] to read [the] Agreement, as it affects [his] rights," and provided a link – using the words "MAA Opt Out" – to a web page where Shelton could electronically register his decision to opt out. *Id.*

Shelton received *four* follow-up emails at his Company-issued email address on June 22, 2020, July 6, 2020, July 20, 2020, and August 3, 2020 – all identical in substance to the first email. *Id.* ¶ 17, Exh. 3. All five emails unequivocally explained that Shelton would accept the offer to mutually arbitrate claims by failing to opt out before the August 7, 2020 deadline. *Id.* Shelton was expected to read and respond appropriately to emails delivered to his Company-issued email account. *See* Declaration of Rose Floyd ("Floyd Decl.") ¶ 6. AT&T also took steps to ensure that employees received notice of the Agreement. Any automated responses to the emails just described – which would indicate if there were problems with electronic delivery (e.g., an "undeliverable message"), or if the recipient had set up an automated "out of office" reply – were delivered to a central email inbox. *See* Giordano Decl. ¶ 18. None of the five emails to Shelton generated an automatic reply. *Id.* ¶ 20.

**B.     The Agreement applies to any claim Shelton may have against AT&T.**

By its terms, the Agreement "is governed by the Federal Arbitration Act" and "applies to any claim that [Shelton] may have against … any AT&T company." *Id.* ¶ 21, Exh. 2. Like the emails that preceded it, the Agreement clearly states the purpose and effect of the arbitration program:

> Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation. Arbitration is more

3

>informal than a lawsuit in court, and may be faster. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Under this Agreement, Arbitrators can award the same damages and relief that a court can award … This Agreement requires all [covered] disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial.

*Id.* The Agreement explicitly applies to "claims includ[ing] without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship," including claims arising under the Civil Rights Act of 1964 "and state statutes and local laws, if any, addressing the same or similar subject matters[.]" *Id.*

The Agreement reiterates that failure to opt out of the arbitration program within 60 days would result in Shelton accepting the Agreement's terms: "**Should you choose not to participate, you must opt out – that is, decline to participate in the arbitration process – no later than 11:59 p.m. Central Standard Time on Friday, August 7, 2020**. If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement." *Id.* (emphasis in original). Like the emails Shelton received, the Agreement also provided simple instructions for opting out, which included an opt out link that would "generate and send [Shelton] written confirmation of [his] decision to opt out." *Id.*

  **C.** **Shelton did not exercise his right to opt out of the Agreement, and continued working for AT&T beyond the opt-out deadline.**

Shelton did not exercise his right to opt out of the Agreement, and AT&T kept track of those employees who chose to opt out of the Agreement. *Id.* ¶ 22-23. Thousands of AT&T employees did, but Shelton did not. *Id.* And Shelton continued working for AT&T for two and a half years beyond the opt out deadline. Complaint ¶ 43-44. Rather than attempting to resolve his dispute with AT&T through arbitration, however, Shelton filed this lawsuit. Indeed, even after

4

being reminded of his contractual obligations under the Agreement, he refused to submit his claims to arbitration. *See* Declaration of Kenneth W. Gage ¶ 3-5.

### III. ARGUMENT

#### A. The Federal Arbitration Act requires that Shelton arbitrate his claims.

Under the Federal Arbitration Act ("FAA"), which governs the Agreement, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Giordano Decl. ¶ 21, Exh. 2 ("This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce"). This provision embodies "'both a liberal federal policy favoring arbitration … and the fundamental principle that arbitration is a matter of contract.'" *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) ("the FAA sweeps broadly, requiring courts to rigorously enforce arbitration agreements according to their terms") (citation and internal quotation marks omitted).

To effectuate these principles, this Court "*must* grant a motion to compel arbitration under the FAA where the parties have a written arbitration agreement and the asserted claims are within its scope." *Auyeung v. Toyota Motor Sales, USA, Inc.*, No. 19 C 278, 2019 WL 3385189, at *3 (N.D. Ill. July 1, 2019) (granting motion to compel arbitration) (emphasis added, citations omitted). "To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws." *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 718

(N.D. Ill. 2014); *see also Concepcion*, 563 U.S. 333, 352 (holding that state laws that disfavor arbitration are preempted by the FAA).[2]

Here, the parties entered into a valid arbitration agreement that captures Shelton's claims against AT&T. This Court should therefore compel the parties to arbitrate Shelton's claims.

    **B.    The parties entered a valid and enforceable agreement to arbitrate.**

"State law governs the question of whether the parties formed an enforceable arbitration agreement." *Grzanecki v. Darden Rests.*, No. 19 C 5032, 2020 WL 1888917, at *4 (N.D. Ill. Apr. 16, 2020). Under Illinois law, "an enforceable arbitration agreement must have the 'basic ingredients of a contract,' i.e., an offer, an acceptance, and consideration." *Id*. (quoting *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006)). And "a mutual promise to arbitrate is sufficient consideration to support an agreement to arbitrate." *Williams v. TCF Nat'l Bank*, No. 12 C 05115, 2013 WL 708123, at *11 (N.D. Ill. Feb. 26, 2013) (quoting *Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 623 (Ill. App. Ct. 2000)).

    ***i.    AT&T made a valid offer***

Under Illinois law, an employer mailing materials containing an arbitration agreement and the method of acceptance constitutes an offer. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108–09 (2006); *Pohlman v. NCR Corp.*, No. 12 cv 6731, 2013 WL 3776965, at *2 (N.D. Ill. July 17 2013). Similarly to *Gupta*, where the employee received Morgan Stanley's arbitration offer to his work email, Shelton received AT&T's offer to arbitrate to his work email. Declaration of

---

[2] In discussions with the undersigned, Shelton's counsel urged that the Illinois Workplace Transparency Act precludes enforcement of the MAA. He is wrong. *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 492 (7th Cir. 2004) ("If a state treats arbitration differently, and imposes on form arbitration clauses more or different requirements from those imposed on other clauses, then its approach is preempted by § 2 of the Federal Arbitration Act"); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) ("Even if Illinois law considered pre-dispute arbitration agreements unconscionable, the FAA would preempt such law").

Michael D. Albert ("Albert Decl.") ¶ 4-5; Giordano Decl. ¶ 17; *Gupta*, 934 F.3d at 713. The email contained both the Agreement and method of accepting or declining the offer. Giordano Decl. ¶ 21, Exh. 1 . Thus, Shelton received a valid offer to arbitrate claims.

### ii. Shelton affirmatively accepted AT&T's offer to arbitrate.

Shelton accepted AT&T's offer to arbitrate all disputes when he did not exercise his right to opt out of the Agreement. The fact that Shelton did not sign the Agreement does not affect the validity of the contract. *Gupta*, 934 F.3d at 710 ("Although [the FAA] requires arbitration agreements to be in writing, it does not require them to be signed"); (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002); *McMahan v. Rizza Chevrolet, Inc.*, No. 05 C 705, 2006 WL 2560883, at *3 (N.D. Ill. Aug. 31, 2006) ("The FAA does not specifically require a signature or a date. An arbitration agreement can be enforceable even if it is not signed or dated" (citation omitted)); *Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *8 (N.D. Ill. Mar. 1, 2022) ("Because neither the text [ ] nor the circumstances surrounding [the Agreement] show that the parties intended to require signatures, the parties could assent to the Agreement without signing it"). Further, "[a] party named in a contract may, by his acts and conduct, indicate his assent to its terms and become bound by its provisions even though he has not signed it." *Gupta*, 934 F.3d at 713 (quoting *Bauer v. Qwest Commc'ns Co., LLC,* 743 F.3d 221, 227 (7th Cir. 2014) (interpreting Illinois law) (citations omitted).

Shelton's silence is conduct that constitutes assent to the arbitration provision. *Id.* at 710; *Page v. Alliant Credit Union*, No. 1:19-cv-5965, 2020 WL 2526488, at *2 (N.D. Ill. May 18, 2020) ("[T]he conspicuous and unambiguous opt-out provision of the agreement and coupled with plaintiff's silence makes plaintiffs' silence constitute assent to the arbitration provision."); *Biermann v. Comcast Cable Commc'ns. Mgmt.*, LLC, No. 20 C 2986, 2020 WL 6870824, at *3 (N.D. Ill. Nov. 23, 2020) (holding that Comcast's mailing and e-mailing of the arbitration

7

agreement was a valid offer, and the employee's silence following delivery constitutes acceptance). Similarly, a plaintiff's failure to read an agreement does not relieve them of their responsibilities under an arbitration agreement. *Page*, 2020 WL 2526488, at *2; *see also F.T.C. v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 946 (N.D. Ill. 2008) ("Long-standing principles of contract and sound public policy impose a duty on contracting parties to understand the obligations they are assuming, and if they do not, they cannot be heard to later complain about a lack of understanding."); *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 385 (7th Cir. 2007) ("[O]ne cannot accept a contract and then renege based on one's own failure to read it").

Like in *Gupta*, where the court concluded that the plaintiff's silence and inaction after being given a reasonable opportunity to opt out, along with his continued employment, amounted to acceptance of the agreement to arbitrate, Shelton accepted and is bound by the Agreement he failed to opt out of. 934 F.3d at 713-714.

### iii. Mutual promises to arbitrate constitute sufficient consideration to support the Agreement.

A mutual promise to arbitrate is sufficient consideration. *Grzanecki*, 2020 WL 1888917, at *4 (granting motion to compel arbitration where both parties were "equally bound" to arbitrate claims); *Cantrell v. Fidelitone, Inc.*, No. 15 C 10696, 2016 WL 1161325, at *4 (N.D. Ill. Mar. 24, 2016) (granting a motion to stay where mutual promises sufficed as consideration); *see also Burke v. 401 N. Wabash Venture*, LLC, 714 F.3d 501 (7th Cir. 2013). Here, the parties mutually assented to the Agreement. Both Shelton and AT&T are required to arbitrate any claims they may have against one another: "This agreement applies to any claim that you may have against [AT&T] … and this agreement also applies to any claim that the Company or any other AT&T company may have against you." Giordano Decl. ¶ 21, Exh. 2. AT&T's offer and consent to be bound is self-

8

evident in its communication of the Agreement to Shelton. Thus, the Agreement is supported by consideration.

Because the requirements for a valid contract under Illinois law are met, Shelton and AT&T are bound by their mutual promises to arbitrate covered claims, including those Shelton brings here.

### C. Shelton's claims are within the scope of the Agreement.

"A request for arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Wal-Mart Stores*, 51 F. Supp. 3d at 718 (quoting *United Steelworkers of Am. V. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83 (1960). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration.").

Shelton's claims, which are brought under Title VII and state statutes, are expressly within the scope of the Agreement, which captures all claims "arising out of or related to [his] employment," including "disputes regarding the employment relationship … compensation … retaliation … discrimination … claims arising under the Civil Rights Act of 1964 … and state statutes and local laws, if any, addressing the same or similar subject matters[.]" Giordano Decl. ¶ 21, Exh. 2. Where, as here, the plaintiff brings statutory claims that are expressly captured by the arbitration agreement, the plaintiff must submit those claims to arbitration. *See Manor v. Copart Inc.*, No. 17-cv-2585, 2017 WL 4785924, at *3 (N.D. Ill. Oct. 24, 2017) (granting motion to compel arbitration of Title VII and related state-law claims, where the arbitration clause

9

expressly covered the claims alleged in plaintiff's amended complaint). Thus, as in *Manor*, Shelton's claims must be arbitrated.

        **D.    This Court should stay this action pending arbitration.**

The FAA mandates that "if a federal court is 'satisfied that the issue involved' in a suit before it is 'referable to arbitration' under 'an agreement in writing for such arbitration,' then the court '*shall* … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.'" *Raza v. Crowdstrike, Inc.*, No. 21-cv-4196, 2021 WL 5882134, at *2 (N.D. Ill. Dec. 13, 2021) (quoting 9 U.S.C. § 3) (emphasis added). Because Shelton's claims are within the scope of a valid arbitration agreement, this Court should stay the case until his claims have been arbitrated.

**IV.    CONCLUSION**

For the foregoing reasons, this Court should order Shelton to submit his claims to arbitration pursuant to the Agreement, and stay this action pending completion of arbitration.

| | |
|---|---|
| Dated: July 24, 2023 | PAUL HASTINGS LLP |
| | |
| | _____ |
| | Kenneth W. Gage |
| | (*Member of the N.D.Ill. Trial Bar*) |
| | 71 South Wacker Drive, Suite 4500 |
| | Chicago, IL 60606 |
| | (312) 499-6146 |
| | |
| | Allison Talker |
| | (*Admitted pro hac vice*) |
| | 200 Park Avenue |
| | New York, NY 10166 |
| | (212) 318-6000 |
| | |
| | *Attorneys for Defendant* |
| | *AT&T Mobility Services LLC* |