UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAROD SHELTON, | Case No. 1:23-cv-03538 |
| Plaintiff, | |
| v. | |
| AT&T SERVICES, INC., | |
| Defendant. | |

**DECLARATION OF BRANDY GIORDANO IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

COMES NOW BRANDY GIORDANO, and pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a citizen of the United States, over the age of 18, and competent to testify as to the matters contained in this Declaration.

2. I have personal knowledge of the facts set forth in this Declaration, or I have knowledge of such facts based upon information from business records of AT&T and its affiliates and subsidiaries (collectively, "AT&T" or the "Company") in my custody and control.

3. I am currently employed by AT&T as a Lead HR Specialist/Generalist and have held this role since December 16, 2013.

4. In my capacity as a Lead HR Specialist/Generalist, I have access to the Centralized Employee Table ("CENET"), AT&T's Human Resources data repository which holds current and historical information in the regular course of business for AT&T's employees.

5. AT&T assigns each employee a unique user identification number ("ATTUID") and CENET contains the employee's ATTUID in the regular course of business. Plaintiff Jarod Shelton's ATTUID is JX5697.

6.      I searched the Company's CENET records using ATTUID JX5697 to locate details about Jarod Shelton and his employment. For instance, I can confirm that, from June – August 2020, AT&T employee Jarod Shelton with ATTUID JX5697 worked as a Sales Executive 1 Acquisition and his work address was 225 W Randolph St, Chicago, IL.

7.      My job duties as a Lead HR Specialist/Generalist require me to be familiar with the Management Arbitration Agreement (the "Agreement") distributed by AT&T to certain of its management employees.

8.      During mid-2020, including the time period from June 8, 2020 through August 7, 2020, AT&T distributed notifications to its employees that they were eligible to participate in a voluntary program under which all disputes between the Company and AT&T employees covered by the program would be resolved by binding arbitration (the "Arbitration Program") as described in the Agreement.

9.      During mid-2020, including the time period from June 8, 2020 through August 7, 2020, AT&T utilized a software program called "Promenta," which permitted a user to enter email text (including links to documents located elsewhere on AT&T's intranet systems) and select large groups of recipients. AT&T used Promenta to communicate hundreds of AT&T policies to AT&T employees for review and acknowledgement. I personally used Promenta to communicate ten AT&T policies to AT&T employees for review and acknowledgement.

10.      Promenta worked in connection with an email account in Microsoft Outlook, AT&T's email application (the "Email Account"). The Email Account was used as a vehicle for Promenta to send communications about the Agreement and notifications about other AT&T policies through AT&T's SAP learning system. I have had, and continue to have, access to the Email Account in the course of my job duties. In my experience, Promenta and the Email

Account reliably worked in combination to distribute communications and track employee acknowledgments.

11.     In the days prior to June 8, 2020, AT&T entered the text of the exemplar email attached as Exhibit 1 to my Declaration into Promenta and designated that email to be sent beginning June 8, 2020, to all AT&T's U.S.-based management employees who had either recently been promoted to a management position since the prior round of notifications about the Arbitration Program, or who had been on a leave of absence during the period when the prior notifications went out.  The Bulletin ID assigned to this distribution was 62419250. Promenta was designed to send emails to a total population of approximately 2,926 U.S.-based management employees; therefore, it took approximately two minutes to complete delivery of the emails to the entire target audience. The email to each of these employees contained the subject heading "Action Required: Notice Regarding Arbitration Agreement."  A true and correct copy of the text of that email is attached to my declaration as Exhibit 1.

12.     AT&T also used Promenta to send multiple "reminder" emails, identical to those sent on June 8, 2020, during the 60-day opt-out period employees had to consider the Agreement and record their decision to opt out of the Arbitration Program.

13.     Before the first of the emails described in paragraph 11 above were delivered, AT&T used Promenta to "publish" the full text of the Agreement to a location on AT&T's corporate intranet ("intranet page").  Once "published," the Agreement was immediately accessible on the intranet page to all employees who were designated to receive the notification email. A true and correct copy of the text of the Agreement that AT&T published is attached to my declaration as Exhibit 2.  From that point forward, employees could access the Agreement by

visiting the intranet page directly, as well as through the link contained in the exemplar email at Exhibit 1.

14. When Promenta was used to automate the distribution of an email, AT&T's computer system generated a log of all emails sent through the SAP learning system including the time and date sent, the sender, the recipient, and the subject line. In the example discussed in paragraph 11 above, the SAP learning system would generate a table showing the email address of each of the recipients of the email, along with the day the email distribution started.

15. On June 1, 2021, AT&T ceased using the Promenta program. In the months leading up to June 1, 2021, AT&T worked with the Promenta team to export all data associated with the Arbitration Program from Promenta and AT&T's SAP learning system to AT&T's Management Arbitration Campaign ("MAC") application so that AT&T could continue to access historical data. Since June 1, 2021, the data associated with the Arbitration Program have been accessible in MAC in the regular course of business.

16. On June 6, 2023, I utilized a search function in MAC to retrieve a list of all emails for Bulletin ID 62419250 sent through the SAP learning system from June 8, 2020 through August 7, 2020 to ATTUID JX567 using the email address JX5697@US.ATT.COM.

17. From the results of that query, I have determined that emails with the subject heading "Action Required: Notice Regarding Arbitration Agreement," and contents identical to those of the email attached to my declaration as Exhibit 1, were sent to recipient JX5697@US.ATT.COM on June 8, 2020 at 2:00 a.m. Pacific Time; June 22, 2020 at 3:00 a.m. Pacific Time; July 6, 2020 at 3:00 a.m. Pacific Time; July 20, 2020 at 3:00 a.m. Pacific Time; and August 3, 2020 at 3:00 a.m. Pacific Time. A screenshot of the query results showing these data is attached to my declaration as Exhibit 3.

18.     In addition to acting as a vehicle for Promenta to send the email notifications about the Agreement, AT&T uses the Email Account to collect any responses from employees (*e.g.*, questions about the Agreement from employees) in the ordinary course of business. Microsoft Outlook automatically generates certain responses to emails when there is an issue or problem associated with the delivery of an email.  For example, a user can set up an automatic reply that notifies senders that the user cannot immediately respond (for example, because he or he is on vacation or in a meeting).  Microsoft Outlook also automatically generates a response when an email is returned as undeliverable (such as when the file is too large to permit delivery, or an email address is incorrect).  The Email Account is used to collect any automatic reply messages or undeliverable messages received in response to the notifications about the Agreement in the ordinary course of business.

19.     All emails received by the Email Account during the rollout of the Arbitration Program from June 8, 2020 through August 7, 2020 have been retained in the ordinary course of business.

20.     On July 20, 2023, I accessed the file containing the emails described in paragraph 17 above and searched for the terms "Jarod Shelton", "Shelton, Jarod" and "JX5697".  My search returned no results for the terms "Jarod Shelton", "Shelton, Jarod" or "JX5697"; there were no automatic replies or undeliverable messages with these terms or from an employee with this ATTUID received by the Email Account.

21.     My job duties as a Lead HR Specialist/Generalist also require me to be familiar with the opt-out process the Company put in place for those employees who chose not to be bound by the Agreement (the "Opt-out Process").  Instructions for opting out of the Agreement were laid out in the email attached to this Declaration as Exhibit 1 and in the Agreement attached

to this Declaration as Exhibit 2. The Opt-out Process consisted of accessing a link to a site where the employee would be able to electronically register his or her decision to opt out.

22. AT&T's computer system was configured to contemporaneously record the employee's name and ATTUID to an electronic spreadsheet (the "Master List") whenever an employee went through the Opt-out Process. From time to time, both before the Agreement was distributed and during the period from June 8, 2020 through August 7, 2020, AT&T tested the Opt-out Process to ensure that the names of employees electronically registering their decisions to opt out were correctly recorded on the Master List. Those tests demonstrated that the Opt-out Process accurately and reliably recorded opt-out information on the Master List. Indeed, during the designated opt-out period thousands of employees exercised their right to opt out of the Agreement, and the Master List recorded their names and ATTUIDs. The Master List has been retained in the ordinary course of business.

23. On July 20, 2023, I searched the Master List using the search terms "Jarod Shelton", "Shelton, Jarod" and "JX5697". My search for those terms in the Master List produced no results. There is no record of any individual with the ATTUID JX5697 in the Master List and, therefore, no record of anyone with that ATTUID opting out of the Agreement. If Jarod Shelton with ATTUID JX5697 had opted out, his name and ATTUID would appear on the Master List, and they do not.

**PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. I AM AWARE THAT IF ANY OF THE FOREGOING STATEMENTS MADE BY ME ARE FALSE, I AM SUBJECT TO PUNISHMENT.**

Executed this 20th day of July, 2023 at Elk Grove, California.

*Brandy Giordano*
BRANDY GIORDANO

DocuSign Envelope ID: FB97CDB2-278C-4D6C-99B0-3E541548DED4

# GIORDANO DECLARATION EXHIBIT 1

| | |
|---|---|
| **From:** | Management Arbitration Agreement |
| **To:** | Management Arbitration Agreement |
| **Subject:** | Action Required: Notice Regarding Arbitration Agreement |
| **Date:** | Monday, June 08, 2020 2:06:56 AM |

### REVIEW REQUIRED

**Action Required: Notice Regarding Arbitration Agreement**

AT&T has created an alternative process for resolving disputes between the company and employees. Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court, and may be faster.

The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email.** It provides important information on the process and the types of disputes that are covered by the Agreement.

Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Friday, August 7, 2020
to opt out -- that is, decline to participate in the arbitration process -- using the instructions below.

If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.

**Instructions for "Opting Out" of the Agreement:**

**To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out.** The company will acknowledge in the writing that it has received your opt-out request, and an opt-out attempt is invalid unless and until the company's acknowledgement is sent. If you have attempted to opt out and have not received the confirmation, please email the Management Arbitration Agreement team at g04780@att.com.

Remember, the decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement. If, contrary to this assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).

If you have any questions about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").

**Important: August 7, 2020 is the deadline to act if you do not wish to resolve disputes through arbitration.**

**Access the Agreement by clicking the hyperlink below:**

Click here to review

# GIORDANO DECLARATION EXHIBIT 2

**Important Notice Regarding Management Arbitration Agreement**
The Management Arbitration Agreement that appears below provides for employees and AT&T to use independent, third-party arbitration rather than courts or juries to resolve legal disputes. **It is very important that you read this Agreement, as it affects your rights. This Agreement was distributed to others previously; it is being sent to you now because you were on a leave of absence during the initial distribution/subsequent distributions or because you were promoted into management or within management after approximately February 2019.**

The decision whether or not to participate in the arbitration process is entirely up to you. No one will be subjected to pressure or retaliation in connection with this decision. If, contrary to this assurance, you believe you have experienced any pressure or retaliation, please contact the AT&T Hotline (888-871-2622).

**Should you choose not to participate, you must opt out -- that is, decline to participate in the arbitration process -- no later than 11:59 p.m. Central Standard Time on Friday, August 7, 2020.** If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. If you choose to opt out, use this link MAA Opt Out, which will take you to the site where you can electronically register your decision to opt out. That site will generate and send to you written confirmation of your decision to opt out. The company will acknowledge in writing that it has received your opt-out request, and an opt-out attempt is invalid unless and until the company's acknowledgement is sent. If you have attempted to opt out and have not received the confirmation, please email the Management Arbitration Agreement team at g04780@att.com immediately. Once you have completed your review of the Agreement, please click the "Review Completed" button, whether or not you choose to opt out.

If you have any questions about this Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").

**MANAGEMENT ARBITRATION AGREEMENT**

***Please carefully review this new Management Arbitration Agreement. Your decision in this matter is important.***

**Summary**

Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation. Arbitration is more informal than a lawsuit in court, and may be faster. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Under this Agreement, Arbitrators can award the same damages and relief that a court can award. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. Except for a filing fee if you initiate a claim, the Company pays all the fees and costs of the Arbitrator. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to the same extent as you would be in court.

**How This Agreement Applies**

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce. (If for any reason the Federal Arbitration Act is held not to apply, then the law of arbitration of the state in which you work or last worked for the Company shall apply.) This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any

DocuSign Envelope ID: EB97CDB2-278C-4D6C-99B9-3E541548DFD4

other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse you from utilizing the Company's or employee benefit plans' existing internal procedures for resolution of complaints.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, which shall be determined only by a court of competent jurisdiction.

**Limitations On How This Agreement Applies**

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits. In order to ensure that employee benefit plan claims procedures comply fully with Department of Labor regulations (for example, 29 C.F.R. § 2560.503-1(c)(4)), this Agreement also does not apply to claims arising under the Employee Retirement Income Security Act ("ERISA").

This Agreement does not apply to any pending lawsuit that was on file in any federal or state court and to which you were a party as of June 8, 2020.  Nor does this Agreement apply to any pending alleged or certified class, collective, or representative lawsuit that was on file in any federal or state court as of June 8, 2020, in which you were reasonably identifiable as a class member (or in the case of representative action, a beneficiary) as of that date.

Regardless of any other terms of this Agreement, you may still bring certain claims before administrative agencies or government offices or officials if applicable law permits access to such an agency, office, or official, notwithstanding the existence of an agreement to arbitrate. Examples would include, but not be limited to, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/ofccp/). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency or employee benefit plan in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to a pre-dispute arbitration agreement, such as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) or the Franken Amendment (Section 8116 of the Defense Appropriations Act of 2010, Section 8096 of the Consolidated Appropriations Act of 2014 and any other law or regulation that extends the application of this amendment), also are excluded from the coverage of this Agreement.

**To the maximum extent permitted by law, you hereby waive any right to bring on behalf of persons other than yourself, or to otherwise participate with other persons in: any class action; collective action; or representative action, including but not limited to any representative action under the California Private Attorneys General Act ("PAGA") or other, similar state statute. You retain the right, however, to bring claims in arbitration, including PAGA claims, but only for yourself as an individual. If a court determines that you cannot waive your right to bring a representative action under PAGA, any such claim may only be brought in court and not in arbitration.  Notwithstanding any presumption of law or any rule of arbitration, a court and not the arbitrator shall rule on the enforceability and applicability of this paragraph.**

**Arbitration Rules, Selecting The Arbitrator, And Location Of Hearing**

The arbitration will be held under the auspices of a third party which will manage the arbitration process: JAMS, Inc. or any successor. The arbitration shall be in accordance with its Employment Arbitration Rules & Procedures (and no other JAMS rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. The Company will supply you with a printed copy of those rules upon your request. Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"), selected pursuant to JAMS rules or by mutual agreement of the parties.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement. Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company. If you so choose, and if your residence is not in the same county (or parish) where you work or last worked for the Company, you may designate that the proceeding will occur within the county (or parish) where you reside.

**Notice Requirements And Starting An Arbitration**

The Company must, and you may, notify the other party of a claim to be arbitrated by using the forms provided on the JAMS website (www.jamsadr.com.) Alternatively, you may commence an arbitration against the Company, its officers, directors, employees, or agents by sending to the Company a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: SVP & Asst GC – Litigation, 208 S. Akard St., Dallas, TX 75202 ("Notice Address"). The Notice must (a) identify all parties, (b) describe the nature and basis of the claim or dispute; and (c) set forth the specific relief sought ("Demand"). Any party giving written notice of a claim to be arbitrated must do so no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim.
The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. To the extent permitted by law, a party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled would be rendered ineffectual without such provisional relief.

**Paying For The Arbitration**

The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator; provided, however, that if you are the party initiating the claim, you will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which you are (or were last) employed by the Company. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

**How Arbitration Proceedings Are Conducted**

In arbitration, the parties will have the right to conduct limited civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

Each party shall have the right to take depositions of up to three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make one request for production of

DocuSign Envelope ID: EB97CDB3-278C-4D6C-99B9-3E541548DFD4

documents to any party. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds the party has demonstrated that it needs the requested discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute-resolution mechanism. Each party shall have the right to subpoena documents and witnesses from third parties subject to any limitations the Arbitrator shall impose for good cause shown.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party shall have the right to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

**The Arbitration Award**

The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under or opt out of this Agreement. If you believe that you have been retaliated against by anyone at the Company, you should immediately report this to the AT&T Hotline (888-871-2622)

**Sole and Entire Agreement**

This is the complete agreement of the parties on the subject of arbitration of disputes. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

**Construction and Severability**

If any provision of this Agreement is adjudicated to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

DocuSign Envelope ID: EB97CDB3-278C-4D6C-99B9-3E541548DFD4

**GIORDANO DECLARATION EXHIBIT 3**

DocuSign Envelope ID: EB976DB3-278C-4D6C-99B9-3E541548DFD4

## Initial E-Mail and Reminder Sent

| Receipient Email | Doc Title | Email Sent Date | Email Sent Time | Message No |
|---|---|---|---|---|
| JX5697@EXO.ATT.COM | Action Required: Notice Regarding Arbitration Agreement | 08/03/2020 | 03:00:29 | 073 |
| JX5697@EXO.ATT.COM | Action Required: Notice Regarding Arbitration Agreement | 07/20/2020 | 03:00:30 | 073 |
| JX5697@EXO.ATT.COM | Action Required: Notice Regarding Arbitration Agreement | 07/06/2020 | 03:00:25 | 073 |
| JX5697@EXO.ATT.COM | Action Required: Notice Regarding Arbitration Agreement | 06/22/2020 | 03:00:27 | 073 |
| JX5697@EXO.ATT.COM | Action Required: Notice Regarding Arbitration Agreement | 06/08/2020 | 02:00:21 | 073 |